KING et al. v. DAVIS.

No. 31914. Dec. 22, 1945.

164 P. 2d 639.

Guy L. Andrews, of McAlester, for plaintiffs in error.

Ernest W. Thomas, of McAlester, for defendant in error.

ARNOLD, J. This action was commenced in the district court of Pittsburg county by Fletcher Davis against W. C. King and Jeanne M. King to recover the balance of the commission for the sale of real estate. Plaintiff alleged, in substance, that he is and at all times therein stated was a broker buying and selling real and personal property for a commission; that on or about the 1st day of April, 1942, the defendants, W. C. King and Jeanne M. King, employed and authorized him to sell certain real property therein described for the sum of $8,500, for which they orally agreed to pay a commission of 5 per cent; that he has performed all conditions on his part, and on or about the 1st day of May, 1942, found a purchaser, viz., J. T. Downey and Rose Downey, who were willing, able, and ready to pay said sum of $8,500 for said property; that after some negotiations, said J. T. Downey and Rose Downey did buy said property and did pay said sum of $8,500 therefor; that he has been paid the sum of $212.50 and defendants are indebted to him and he prayed judgment for the balance of $212.50.

Defendants, W. C. King and Jeanne M. King, filed separate answers. The answer of W. C. King admitted that Davis introduced him to J. T. Downey; admitted that negotiations started which resulted in the sale of the land for $8,500, but alleged that in order to make the deal it was necessary for him to furnish an abstract, pay the 1942 taxes, complete a pond, waive certain pasture rights, and give up certain stock fields to the purchaser; that he and Davis had in the past worked together on various land deals for their mutual advantage; that he, King, approached Davis and told him of the expenses which it would be necessary to incur and the concessions he would have to make to complete the deal and that he would not sell if Davis insisted on the full 5 per cent commission; that Davis thereupon agreed to accept one-half the usual commission or $212.50; that thereafter he paid Davis a check for $212.50 marked "Com. Ranch Deal"; that Davis cashed the check and was thereby paid in full, and prayed that Davis take nothing. The answer of Jeanne M. King consisted of a general denial and an allegation that she never employed the plaintiff or authorized him to sell the land involved and was in no way liable for a commission.

Plaintiff replied to these separate answers by general denial.

Upon trial of the case to a jury a verdict was returned in favor of plaintiff for the sum of $212.50 and judgment was entered thereon.

There are three assignments of error as follows: (1) error of the court in overruling the motion of defendants for a directed verdict; (2) error of the court in giving a certain instruction; (3) error in refusing to give a requested instruction.

Although several questions are argued in the briefs of the parties the vital question involved, as we view the record, is: Was the commission contract between plaintiff and defendants for a 5 per cent commission on the sale of this real estate or was the contract for a 2½ per cent commission on such sale?

Plaintiff testified that he was a real estate broker and that W. C. King employed him to sell certain real estate located in Pittsburg county and agreed to pay him a commission of 5 per cent, which amounted to $425, on the sale price of $8,500; that he procured a purchaser who was ready, able, and willing to purchase the land; that he introduced him to W. C. King and that after some negotiations between them

the sale was finally consummated for the sum of $8,500; that there was some delay in consummating the transaction, but that it was completed early in September, and that on the 14th day of September the defendant, W. C. King, came to his office and tendered him a check for $212.50, same being a 2½ per cent commission on the sale, and that after considerable discussion between them as to the terms of their contract he accepted the check because he believed that he would get no more money from the defendant; that he informed defendant, when he accepted the check, that it was only half of his commission; that no controversy arose between him and King until after the sale was consummated.

J. T. Downey, the purchaser of the land, was a witness for plaintiff and testified that he saw the land advertised in the Kansas City Star and that he communicated with the plaintiff by letter to learn more of the details; that after receiving a letter from the plaintiff he made a trip to Pittsburg county and contacted him; that the plaintiff went with him to see the land, introduced him to the defendant, W. C. King, and that he and King went over the land together and discussed the price and other details; that he was then undecided and returned to his home in Pawhuska; from there he wrote another letter to the plaintiff offering $8,000 cash for the land; that he received a communication from the plaintiff advising him that the owner of the land would not take less than $12.50 an acre, or $8,500; that he thereupon returned to Pittsburg county and that on a third trip he closed the deal and purchased the land for cash.

Defendant, W. C. King, testified that he and his sister, Jeanne M. King, jointly owned the ranch in Pittsburg county; that he had authority from his sister to sell her part of the land; that he employed plaintiff to assist him in selling the land, but that because of expenses and concessions which he had to make in order to close the deal he told plaintiff he could only agree to

pay him 2½ per cent commission, or the sum of $212.50, and that plaintiff agreed to this; that some time after the deal was closed he met plaintiff for the purpose of paying the commission and that a dispute arose between them as to the percentage agreed upon as commission; that after some discussion he tendered plaintiff a check for the sum of $212.50 in settlement of the controversy; that plaintiff protested at the time contending that they owed him the sum of $425; that after some discussion plaintiff offered to compromise for $300; that defendant declined this and insisted that the amount tendered was all that was owed; that plaintiff then accepted the check, which check bore the endorsement "Com. Ranch Deal".

Conceding for the sake of argument, since the plaintiff Davis does not contend otherwise, that the case should have been submitted to the jury, it is apparent that the vital issue of fact which the jury was called upon to determine was whether the contract between the parties was for a 5 per cent or 2½ per cent commission. At any rate it was simply a question of fact as to which version of the transaction between them was correct. There was evidence in favor of plaintiff which reasonably supports the conclusion reached by the jury, under the well settled rule of this court, that the verdict of a jury on an issue of fact in a law action will not be disturbed where there is evidence reasonably tending to support the same and where no prejudicial error of law appears. Barry v. Kniseley et al., 56 Okla. 324, 155 P. 1168; McLaughlin v. Union Transp. Co., 177 Okla. 115, 57 P. 2d 868; McClellan v. Palmer, 184 Okla. 216, 86 P. 2d 325; City of Tulsa v. Caudle, 193 Okla. 6, 141 P. 2d 107.

The principal contention for reversal made by defendants in their brief is that the check for $212.50 given by W. C. King constitutes accord and satisfaction and is a full settlement of plaintiff's claim. We are of the opinion, upon the record here presented, that

accord and satisfaction was not an issue in the case. The question was: What was the commission agreed upon in the contracts under which the sale was made?

In reference to the conversation in plaintiff's office on September 14, 1942, the defendant, W. C. King, testified:

"A. I gave him a check for $212.50 and I handed it to him and he says, 'Can't you give me $300 on it,' and I said, 'No, that wasn't the contract and he said 'Give me $50 more.' I said 'No, if I felt I owed you $50 more I would give it to you,' and so he took the check and didn't say anything else. Q. Was that check endorsed or a notation on it as to what it was given for? A. Yes, sir. Q. What was that? A. 'Commission on ranch deal', there in the left-hand corner. Q. And it was tendered to him and accepted by him? A. Yes, sir."

This testimony by W. C. King discloses clearly that it was his intention to pay off and discharge the contract which he claimed to have made with the plaintiff, and that the tender of the check, amounting to a 2½ per cent commission, was not intended by him, nor do we think it did, constitute an accord and satisfaction in settlement of a 5 per cent commission. The notation on the check "Com. Ranch Deal" shows that the check was intended to cover the full commission. On cross-examination the same witness testified as follows:

"Q. Now, then, you testified this morning that when you gave him that check you told him that was full payment; is that correct? A. I never told him anything. Q. Oh, you didn't tell him that was in full payment? A. Yes, the check shows for itself. Q. The check says in full payment? A. It says 'Commission on real estate deal,' yes, sir. Q. If you expected that to be in full payment, why didn't you put 'in full payment' on there? A. If I had expected it to be half or a fourth payment, I would have sure marked it that way. Q. And if you had expected it to be full payment you could have marked it that way? A. Not

necessarily, that is full commission. Q. You tell the jury now you didn't tell Mr. Davis that was all the commission? A. No, I didn't tell him that. Q. You didn't tell him that? A. I didn't tell him anything about it."

Nowhere in his direct or cross-examination did the defendant, W. C. King, contend that he was settling the 5 per cent commission by the payment of a 2½ per cent, but the inference is clear, even if the language does not expressly so state, that he was forcing a settlement on the basis of the contract as he claimed it to exist, and that the check for $212.50 was in full discharge and payment of a contract for 2½ per cent commission and was not intended as a compromise in settlement or as accord and satisfaction of a contract to pay 5 per cent commission. Mr. King testified that in the absence of a special agreement the customary broker's commission on the sale of real estate was 5 per cent. He claimed that in this case there was a special agreement for 2½ per cent commission. The jury determined this question adversely to his contention.

Defendants complain of the court's refusal to give their requested instruction No. 2 and of the language of the court in its instruction No. 3 which covered the same subject matter. These instructions were both based upon the theory of accord and satisfaction. The requested instruction of defendants amounted to a peremptory instruction in favor of defendants, and its refusal by the court was proper under the evidence. Instruction No. 3 given by the court was, we think, an erroneous instruction in that it submitted the question of accord and satisfaction, but in the view taken of the case here it was more favorable to defendants than they were entitled to for the reason that the evidence in the case did not authorize an instruction on accord and satisfaction. Under the instruction given, the jury could not find for the plaintiff unless it determined the contract was for a 5 per cent commission and was not thereafter changed by mutual agree-

ment. The error in this instruction was therefore harmless to the defendants.

Judgment affirmed.

GIBSON, C.J., HURST, V.C.J., and BAYLESS, CORN, and DAVISON, JJ., concur.